the person injured for the actual injury sustained. But "punitive or vindictive damages, or smart money, are not to be allowed as against the principal, unless the principal participated in the wrongful act of the agent, expressly or impliedly, by his conduct authorizing it, or approving it, either before or after it was committed." Lake Shore Ry. Co. v. Prentice, 147 U. S. 101–114, 13 Sup. Ct. 261, 265, 37 L. Ed. 97; Craven v. Bloomingdale, 171 N. Y. 439, 64 N. E. 169. But, if the wrongful act is either a part, or in pursuance, of a recognized business system, adopted and authorized by the principal, as in the case of Stevens v. O'Neill, 51 App. Div. 364, 64 N. Y. Supp. 663, affirmed 169 N. Y. 375, 62 N. E. 424, or is the act of an agent or manager to whose charge the general management of the particular business, in the conduct of which the act complained of was done, then the principal is liable, in a proper case to be cast in punitive, as well as compensatory, damages, even though the agent may have violated general instructions of the principal in that regard. Crane v. Bennett, 77 App. Div. 102, 79 N. Y. Supp. 66, affirmed 177 N. Y. 106, 69 N. E. 274, 101 Am. St. Rep. 722. This idea with its limitations is thus expressed by the court in Lake Shore Ry. Co. v. Prentice, 147 U. S. 114, 13 Sup. Ct. 265, 37 L. Ed. 97, cited above:

"The president and general manager, or in his absence, the vice president in his place, actually wielding the whole executive power of the corporation, may well be treated as so far representing the corporation and identified with it that any wanton, malicious, or oppressive intent of his in doing wrongful acts in behalf of the corporation to the injury of others may be treated as the intent of the corporation itself."

The evidence does not disclose the name or title by which Hollister's position or duties in defendant's service were designated; but it seems that he at least had the general management and exclusive control for the corporation of all that part, or department, of its business, in the management of which and as a part of which management, direction, and control this letter in question was written in the name of, and as a letter authorized by, the corporation itself. If defendant had asked to go to the jury for their determination as a question of fact whether or not Hollister did occupy that representative relation to defendant, it is possible that it would have been entitled to have that matter thus determined. But no such request was made; and we cannot say that the evidence on that point is, as matter of law, insufficient to sustain a verdict in which punitive damages were, as we assume, included.

Judgment and order affirmed, with costs. All concur, except WILLIAMS and KRUSE, JJ., who dissent.

---

(127 App. Div. 871.)

### HAMILTON v. HAMILTON.

(Supreme Court, Appellate Division, Fourth Department.   July 7, 1908.)

1. CONTRACTS—CONSIDERATION—EVIDENCE—SUFFICIENCY.
    In an action on an agreement, executed by a brother to his mother and sister, to pay them an annuity, which recited, "For value received, I hereby promise to pay [his mother or sister]," the pleadings of defendant admitted the making of the agreement upon the request of his

father, and the receipt by defendant from his father of large sums of money prior to the making thereof, but denied that the agreement was executed in consideration of money received from the father. Plaintiff rested on the agreement, and defendant testified that no consideration came from the mother or sister, and that he was not indebted to them. *Held*, that the quoted words in the agreement imported a sufficient consideration to sustain the action, as there was no evidence that a sufficient consideration was not given.

2. SAME.

*Held*, also, that it would be assumed, since the agreement imported a consideration, that a sufficient consideration was furnished by the father to sustain the action on the agreement as against the objection that no consideration moved from the mother or sister.

3. SAME—CONSIDERATION MOVING FROM THIRD PERSONS.

An agreement by a son at the instance and request of his father, who made large advancements to him to pay an annuity to his mother, and, on her death, to his sister, which agreement recited that "For value received, I hereby promise to pay [the mother or sister]," is a valid and enforceable agreement in the hands of the mother or sister, though no consideration was furnished by them, and the son was under no obligations to make any provisions for them, as the promise being made directly to them, and not to the father, was sustained by a consideration moving from the father.

4. SAME—DELIVERY—PRESUMPTIONS.

In an action on an agreement executed by a son at the request of his father to pay an annuity to plaintiff, the complaint alleged a delivery to plaintiff, and the answer alleged a delivery to the father, and not to the plaintiff. It was conceded that the annuity was paid for 20 years under the agreement. The plaintiff produced the agreement at the trial and offered it in evidence. There was no other evidence on the question to whom delivery was made. *Held*, that the payments under the agreement constituted a sufficient admission by the defendants of a delivery of the agreement to plaintiff, as it would be assumed that plaintiff's possession of the agreement was lawful, and antedated the payments made by the defendant to the plaintiff.

Action by Julia A. Hamilton against Arthur S. Hamilton to recover installments due on an agreement to pay an annuity. Judgment rendered for plaintiff.

The following is the opinion of FOOTE, J., delivered at Special Term:

This action is brought to recover the unpaid installments due upon the following agreement: "$1,000. Annuity. Payable Quarterly. Rochester, N. Y., April 15, 1874. For value received, I hereby promise to pay Mrs. Sarah Hamilton, the sum of $250 each first day of January, April, July and October, from and after the day of the death of our Father, Samuel Hamilton. These payments to be continued during the term of her life, and in case of her (Mrs. Sarah H.) death, the same shall be paid to her daughter (Julia A.) during her life. Arthur S. Hamilton." The parties are brother and sister and the children of the late Samuel Hamilton and Sarah Hamilton, his wife, both deceased. The complaint alleges that prior to the time of the making and delivery of this agreement the defendant had received from his father, Samuel Hamilton, large sums of money, advanced by his said father from his estate, and in consideration thereof, as a provision said Samuel Hamilton desired to make for his wife, Sarah Hamilton, and for his daughter, the plaintiff, after his death, the defendant, upon the request of said Samuel Hamilton, made and executed and delivered said agreement to the payees therein named. The answer admits the making of said agreement upon the request of said Samuel Hamilton and the receipt by the defendant from his father of large sums of money prior to the making thereof, but denies that said agreement was executed in consideration of said moneys so received from his father.

The answer also denies that defendant delivered the agreement to the payees therein named, but admits that he delivered it to his father upon his request. The complaint also alleges, and the answer admits, that after the death of Samuel Hamilton, which occurred on January 26, 1876, the defendant paid to said Sarah Hamilton the annuity provided by said agreement, until her death, which occurred December 15, 1891, and thereafter to the plaintiff pursuant to such agreement until 1892, when defendant reduced his payments to $700 per year, to which plaintiff assented, and that in November, 1897, defendant informed the plaintiff that he was unable to furnish the plaintiff with any more money, and that since that time defendant has not made any further payments to the plaintiff. The answer also alleges that said instrument was made and delivered without consideration either from Samuel Hamilton or Sarah Hamilton or the plaintiff, and that at the time the same was made the plaintiff was of full age, and that said Samuel Hamilton was not liable for her support or maintenance or indebted to the plaintiff. The answer also sets up the six-year statute of limitations as to all installments which had accrued more than six years before the commencement of the action. Upon the trial the plaintiff produced and put in evidence the agreement, and rested. The defendant then proved by his own testimony as a witness that at the date of the agreement, April 15, 1874, the plaintiff was over 21 years of age, that at that time he was in no way indebted to the plaintiff or to his mother, Sarah Hamilton, and that neither the plaintiff nor his mother paid him any valuable consideration for the agreement either at the time it was made or subsequently. The defendant then rested. The plaintiff thereupon moved for judgment for the amount of the payments maturing within six years from July 9, 1907, the day the action was commenced. The defendant moved for a dismissal of the complaint on the ground that there was no consideration for the agreement and that the consideration alleged had not been proved; also, that the plaintiff was not a party to the contract nor a privy; that there was no consideration moving from her; and that Samuel Hamilton was not indebted to her so as to bring her into privity. The case has since been argued and submitted upon briefs, but no further testimony was offered by either side.

The plaintiff contends that this agreement is a promissory note under the Revised Statutes in force at the time it was made (Rev. St. [1st Ed.] 768, pt. 2, c. 4, tit. 2, §§ 1, 4), and hence that it was not necessary that a consideration should be expressed therein or alleged or proved in an action thereon; that the instrument, whether negotiable or not, imports a consideration. Carnwright v. Gray, 127 N. Y. 92, 27 N. E. 835, 12 L. R. A. 845, 24 Am. St. Rep. 424. It is not necessary to determine whether this instrument is technically a promissory note. It states on its face that it was given "for value received," and, in the absence of evidence to the contrary, this is a sufficient acknowledgment or proof of consideration. Rice v. Rice, 43 App. Div. 458, 60 N. Y. Supp. 97; Prindle v. Caruthers, 15 N. Y. 425. It is not necessary to the validity of the agreement that the consideration should proceed from the plaintiff or her mother. The instrument is equally valid, if the consideration proceeded from Samuel Hamilton, as alleged in the complaint. There is no proof that it did not, and, as the agreement imports a consideration, we must assume that there was a sufficient consideration proceeding from a proper source in the absence of evidence to the contrary. It being conceded by the pleadings that the instrument was executed upon the request of Samuel Hamilton, and the instrument acknowledging receipt of a consideration, it must be assumed that Samuel Hamilton furnished the consideration. If such is the case, the agreement is valid and enforceable in the hands of the plaintiff or her mother, although neither of them furnished any consideration, and although Samuel Hamilton was under no legal obligation to make this provision for their benefit. The Rector, Churchwardens, and Vestrymen of St. Mark's Church v. Teed, 120 N. Y. 583, 24 N. E. 1014; Horn v. Fuller, 6 N. H. 511; Eaton v. Libbey, 165 Mass. 218, 42 N. E. 1127, 52 Am. St. Rep. 511. The case does not fall within the principle of Lawrence v. Fox, 20 N. Y. 268, or any of that class of cases, for the reason that the promise which the plaintiff seeks to enforce is not a promise made to Samuel Hamilton for her benefit as in those cases, but

one made directly to her at the request of Samuel Hamilton. The agreement sued on makes no promise whatever to Samuel Hamilton.

Was there a delivery of this agreement to the plaintiff? The complaint alleges a delivery to the plaintiff. The answer alleges a delivery to Samuel Hamilton. There is no testimony of witnesses upon the subject. It is conceded that the defendant recognized this agreement as in force from 1876, when Samuel Hamilton died, until December 15, 1891, when Sarah Hamilton died, by making the quarterly payments to his mother, Sarah Hamilton, and from December 15, 1891, until November, 1897, by making payments thereunder to the plaintiff. The plaintiff produces the agreement at the trial, and offers it in evidence. It must be assumed that her possession is lawful, and that it antedates the payments made thereon by the defendant to her. The payments are a sufficient admission by the defendant of a delivery of the agreement to the plaintiff, in the absence of all evidence to the contrary.

It follows that the plaintiff is entitled to recover for all payments maturing within six years prior to the 9th day of July, 1907.

Harris, Havens, Beach, & Harris (Edwin A. Nash, of counsel), for plaintiff.

Walter S. Hubbell, for defendant.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of FOOTE, J., delivered at Special Term.

---

(127 App. Div. 761.)

CONKLING v. KRANDUSKY.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1908.)

1. MINES AND MINERALS—OIL LEASES—ABANDONMENT—EVIDENCE—QUESTION FOR JURY.

The owner of land in 1893 executed an oil lease thereof to G., for the term of 15 years or as long as oil should be found in paying quantities. G., in pursuance of the terms of the lease, drilled a well and finished it in 1894, but found no oil in paying quantities, and in the same year took away his machinery and rigging used in drilling, leaving only the casing in the well, and did nothing further in the matter until 1905, after the owner, in 1904, had executed another oil lease of the land to plaintiff, when G. put down another well on the premises. Held, that the evidence showed as a matter of law that G. had abandoned his lease before the execution of the lease to plaintiff.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mines and Minerals, § 204.]

2. SAME—ABANDONMENT OR FORFEITURE.

Where an oil lease is executed for a term of 15 years, or as long as oil is found in paying quantites, and the lessee, after drilling a well and failing to find oil in paying quantities, removes his machinery from the premises and does nothing more under the lease for 11 years, the granting of another lease of the same premises is a declaration on the part of the owner that she regards the outstanding lease as terminated.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mines and Minerals, § 204.]

3. SAME—RIGHTS AND LIABILITIES OF LESSEE.

An oil lease contained a covenant that the lessee was "to stand all expense of any lawsuit that may occur in defending of said lease." Held, that it was incumbent on the lessee to defend the premises against a prior lessee, and in the event of his failure to do so, on the occupation of the premises by the prior lessee, and the failure to show that the